IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JOHN BALLANGER, JR., | * | |
| | * | 4:05-cv-00491 |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MIKE JOHANNS, Secretary of the | * | |
| United States Department of Agriculture | * | |
| | * | ORDER |
| Defendant. | * | |
| | * | |

Plaintiff, John Ballanger, Jr. ("Ballanger"), seeks judicial review of the United States Department of Agriculture's ("USDA" or "Agency") decision that he converted a wetland for agricultural use under 16 U.S.C. §§ 3801, 3821-24, making him ineligible for certain federal benefits. Ballanger appeals a decision issued on May 17, 2005 by M. Terry Johnson, Deputy Director of the USDA National Appeals Division ("NAD"). In that decision, Johnson upheld Hearing Officer B. Dale Hicks' March 23, 2005 decision finding: (1) that Ballanger converted wetland; (2) that the Agency did not have to conduct a study to determine if the removal of woody vegetation impaired water flow; (3) that Ballanger was no longer eligible for USDA benefits; and (4) that Ballanger had to refund USDA benefits he had improperly received in an amount totaling $40,316.23.

Ballanger filed a Complaint (Clerk's No. 1) in this Court on August 25, 2005, and the Agency filed an Answer (Clerk's No. 4) on November 1, 2005. Ballanger filed a brief (Clerk's No. 15) on June 6, 2006, and the Agency filed a brief (Clerk's No. 17) on July 19, 2006. Ballanger filed a reply brief (Clerk's No. 19) on July 28, 2006. The matter is fully submitted.

## II. FACTS AND PROCEEDINGS

Ballanger resides in Appanoose County, Iowa and owns a farm, Serial Number 1770, in Schuyler County, Missouri. Compl. ¶ 4; *see also* Admin. Rec. 5. The record indicates that the United States Department of Agriculture Natural Resource Conservation Service ("NRCS") conducted three inspections of Ballanger's land between April 2002 and December 2003. The inspections were aimed at determining whether Ballanger converted a wetland under the "Swampbuster" provisions of the Food Security Act of 1985, 16 U.S.C. §§ 3801, 3821-24, a law that "denies eligibility for several federal farm-assistance programs if wetlands are converted to agricultural use." *Barthel v. United States Dep't of Ag.*, 181 F.3d 934, 936 (8th Cir. 1999); *see also Gunn v. United States Dep't of Ag.*, 118 F.3d 1233, 1235 (8th Cir. 1997); *Downer v. United States Dep't of Ag. and Soil Cons. Serv.*, 97 F.3d 999, 1002 (8th Cir. 1996). The provisions do not make the conversion of wetland illegal, but instead provide that a farmer who converts a wetland forfeits eligibility for a number of federal farm assistance programs. *Gunn*, 118 F.3d at 1235.

First, in response to a possible violation, the NRCS sent Ballanger a letter informing him that John Baker, Wetland Emphasis Team Leader, and Terri E. Bruner, Soil Conservationist, would conduct a certified wetland determination/delineation on Ballanger's farm, Tract 1169, on April 11, 2002. Admin. Rec. 4. After surveying six locations, identified as Transect/Plot ID numbers 1/1, 1/2, 1/3, 2/1, 2/2, and 2/3, the NRCS determined that Ballanger was in compliance with the Farm Bill. Admin. Rec. 5-23.

Second, after viewing slides, the NRCS sent Ballanger another letter informing him that "some clearing might have occurred on the west side of the Chariton River and could be a

wetland violation." Admin. Rec. 39.  Consequently, John Baker and Terri E. Bruner conducted a second certified wetland determination/delineation on Tract 1169 in July 2002.  Admin. Rec. 43. During that inspection, the NRCS concluded that plot 1, consisting of 5.1 acres, was converted in 1996.  Admin. Rec. 40-46.  The NRCS identified wetland hydrology in drainage patterns, in oxidized root channels in the upper twelve inches, in local soil survey data, and in an FAC-Neutral test.  Admin. Rec. 44.  In November 2003, the NRCS sent Ballanger a letter notifying him of its conclusions, his right to request another field visit, to mediate the issue, or to appeal the conclusions to the Schuyler County Farm Service Agency ("FSA") Committee.  Admin. Rec. 60-63.

     Third, in response to an appeal request by Ballanger, the NRCS conducted a final inspection of Ballanger's land on December 29, 2003.  Admin. Rec. 67.  At that time, "[t]he corn being harvested allowed [the NRCS] to see the area better."  Admin. Rec. 67.  The NRCS was also able to survey the rest of the areas that were cleared in 1996.  Admin. Rec. 67.  The NRCS concluded that one area it had previously delineated as converted was in fact non-wetland. However, the NRCS also determined that two additional wetland areas were converted to cropland.  Admin. Rec. 67.  The NRCS based its determinations on several wetland hydrology indicators, including inundation, saturation in the upper twelve inches, drainage patterns in the wetlands, oxidized root channels in the upper twelve inches, local soil survey data, and FAC-Neutral tests.  Admin. Rec. 67-100.  In March 2004 the NRCS sent Ballanger a letter notifying him of its conclusions.  The NRCS also notified Ballanger of his right to request another field visit, to mediate the issue, or to appeal the conclusions to the Schuyler County FSA Committee. Admin. Rec. 115-119.

On May 4, 2004, the NRCS' technical determination of a wetland conversion became final. Admin. Rec. 121. That same day, Max Starbuck, the Executive Director for the Schuyler County FSA Committee ("COC"), sent Ballanger a letter informing him that the COC must determine if a violation had occurred. Admin. Rec. 121. If Ballanger could produce evidence that he acted in good faith and converted the land without intent to violate the statute, he would remain eligible for USDA/FSA program payments under a good faith exception, provided he restored the land. A good faith determination form and an explanation of Ballanger's appeal rights were submitted along with the letter. Admin. Rec. 121-131.

In a May 11, 2004 visit to the COC office, Ballanger stated that when he purchased the land, the prior owner informed him that there were no wetlands present. Admin. Rec. 132. In June 2004 Ballanger spoke at a COC meeting where he again stated that the prior owner informed him that there were no wetlands present. Admin. Rec. 133. Ballanger also "stated that he had not made a written 'good faith effort to comply with regulations' request as he felt that would be acknowledging wrong doing on his part." Admin. Rec. 133.

On June 15, 2004, the Schuyler County FSA Office denied Ballanger's appeal. Admin. Rec. 133. The COC office informed Ballanger that he was ineligible for USDA/FSA funds beginning in 1996 when the conversion occurred, and that his ineligibility would continue until the program year after restoration and mitigation were successfully completed. Admin Rec. 133. Ballanger did not receive USDA/FSA funds from 1996-1999 or from 2003-2004. Admin. Rec. 133. Consequently, Ballanger was required to refund the USDA/FSA benefits he received from the years 2000 through 2002, totaling $40,316.23 ($35,849.70 in principal and $4,466.53 in interest). Admin. Rec. 134. Ballanger was also informed of his right to seek mediation, to

appeal to the State FSA Committee, or to appeal to the National Appeals Division.  Admin. Rec. 134-137.  The parties sought mediation, but they were unable to resolve their differences. Admin. Rec. 138-142.

### A.  *Appeal to National Appeals Division Hearing Officer Hicks*

Ballanger appealed to the USDA National Appeals Division.  His complaint stated:  "The land at issue is not a 'wetland' as that term is defined in the wetland conservation provision." Admin. Rec. 161, 178, 181.  On March 23, 2005, B. Dale Hicks, a National Appeals Division Hearing Officer, upheld the FSA's determination that Ballanger had converted wetland, that he was ineligible for USDA benefits as long as the land remained converted, and that he had to refund the USDA benefits he had improperly received from the years 2000 through 2002. Admin. Rec. 194-197.

During the appeal, Ballanger argued that "a wetland did not exist on his farm," "that NRCS did not complete a study to determine whether his removal of hydrophytic vegetation impedes the flow of water," and "that the FSA should reinstate his eligibility for USDA program benefits and cancel its demand for payments he received for the years 2000 through 2002." Admin. Rec. 196.  Hearing Officer Hicks rejected all three arguments.  Hicks concluded that the NRCS identified wetlands, found that Ballanger removed woody vegetation, found no federal regulation requiring the Agency to conduct a water flow impairment study, and held that Ballanger must refund the USDA benefits.  Admin. Rec. 194-97.

### B.  *Appeal to National Appeals Division Deputy Director Johnson*

In March 2005, Ballanger requested a Director Review of Hicks's decision.  Admin. Rec. 505-10.  Ballanger's complaint stated:

> There was not a willful violation of the WC regulations and rules regarding this particular farm. The finding is against the weight of the credible evidence. I anticipate an Impartial third party to testify that the area at issue is not in violation of the WC rules and regulations. Further the removal of woody vegetation did not alter or affect the drainage or flow of any water and it was not wetland ground.

Admin. Rec. 511. On May 17, 2005, Deputy Director M. Terry Johnson upheld Hearing Officer Hicks's decision. Admin. Rec. 492-97. During the appeal, Ballanger made the same arguments he presented in his complaint. Admin. Rec. 492-97. The Deputy Director rejected all of Ballanger's arguments for the reasons discussed below.

First, the Deputy Director held that the FSA was not required to conduct a study proving that the removal of woody vegetation impaired water flow because the applicable regulation, 7 C.F.R. § 12.2, does not require a finding of water flow impairment. The Deputy Director concluded that a finding that woody vegetation was removed is sufficient by itself. In addition, the Deputy Director found that the NRCS had ample evidence, based on its visits, samples, and aerial photos, to support its conclusion that the land was converted. Admin. Rec. 496. The Deputy Director noted that Ballanger testified that he "removed woody vegetation (scrub brush, maple trees, and box elder)" with "brush cutting and dozer work." Admin. Rec. 495. Ballanger then "row cropped" the areas. Admin. Rec. 495. Moreover, the Deputy Director found that Ballanger did not file a timely challenge to the March 26, 2004 technical determination. Admin. Rec. 496.

Second, the Deputy Director held that Ballanger objectively violated the regulations, even if he did not subjectively intend to violate them. Moreover, the Deputy Director found that Ballanger was given an opportunity to submit a request for a "good faith" exemption from the regulations, but declined to do so. Admin. Rec. 496-97. Finally, the Deputy Director held that

the Hearing Officer's determination that Ballanger had converted wetlands was supported by the evidence.  Admin. Rec. 497.

C.  *Current Proceedings*

Ballanger filed a Complaint in this Court on August 25, 2005, seeking a declaratory judgment that the "Final Agency action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; was in excess of statutory jurisdiction, authority, or limitations or short of statutory rights; was without observance of procedure required by law, and was unsupported by substantial evidence . . . ."  Compl. ¶ 29.  Ballanger's Complaint contains the following allegations:

> A.  The wetland delineation and converted wetland delineation were made in December, which is after the growing season and contrary to the wetland delineation procedure of NRCS.
>
> B.  NRCS did not collect, analyze and document data to show that the area was inundated for at least seven consecutive days during the growing season or saturated for at least fourteen consecutive days during the growing season.
>
> C.  NRCS failed to collect, analyze and document data to support that the prevalence of hydrophytic vegetation was made in accordance with the current wetland delineation methodology, specifically that the area where hydrophytic vegetation data was collected was in the local area and of the same hydric soil map unit under non-altered hydrological conditions.
>
> D.  NRCS failed to determine whether the removal of the woody vegetation impaired or reduced the flow or circulation of water.
>
> E.  NRCS failed to consider whether the removal of the woody vegetation had only a minimal effect on the wetland functions and values in the area.
>
> F.  NRCS failed to consider whether the removal of the woody vegetation met the criteria for a minimal effect exemption.

Compl. ¶ 29.  The parties' arguments are discussed below.

### III.  JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  Venue is proper under 28 U.S.C. § 1391(e) because the Plaintiff resides in the Southern District of Iowa and no real property is involved.  *See* 28 U.S.C. § 1391(e)(3).  Judicial review of an NAD decision is authorized under 7 U.S.C. § 6999, which states:  "A final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5."

A district court's review of an agency action is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-706.  *See generally Downer*, 97 F.3d at 1002.  Under the APA, the Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).  The Court will "defer to an agency's interpretation of . . . a statute if that interpretation is consistent with the plain meaning of the statute or is a permissible construction of an ambiguous statute."  *Coal. for Fair and Equitable Reg. of Docks on Lake of the Ozarks v. FERC*, 297 F.3d 771, 778 (8th Cir. 2002) (citing *Escudero-Corona v. INS*, 244 F.3d 608, 613 (8th Cir. 2001)); *see generally Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843-44 (1984).  The Court also accords substantial deference to an agency's interpretation of its own regulation and will uphold that interpretation "unless it violates the Constitution or a federal statute, or unless the interpretation is 'plainly erroneous or inconsistent with the regulation.'"  *Coal. for Fair and Equitable Reg. of Docks on Lake of the Ozarks*, 297 F.3d at 778 (quoting *Univ. of Iowa Hosps. and Clinics v. Shalala*, 180 F.3d 943, 950-51 (8th Cir.

1999)); *see also* 5 U.S.C. § 706(2)(B), (C).

IV.  LAW AND ANALYSIS

A.  *Issue Exhaustion*

Ballanger's brief consolidates his six allegations into four issues.  The Agency contends that Ballanger raised only one of the four issues during the administrative proceedings, namely, whether "the removal of woody vegetation [must] impair or reduce the flow or circulation of water in the wetland for the removal to be a conversion of the wetland."  *See* Pl.'s Br. at 9.  The Agency argues that Ballanger did not raise, and that the Court should not consider, the following questions:  (1) whether the "wetland and wetland violation determinations [were] proper when based on data obtained from a site visit outside of the growing season"; (2) whether the NRCS followed "the wetland delineation methodology in effect at the time of the wetland violations when it determined that the sites had the appropriate hydrology and hydrophytic vegetation to be classified as wetlands"; and (3) whether the NRCS must have considered "whether the removal of woody vegetation had only a minimal effect on the wetland functions and values in the area before making a final wetland violation determination."  *See id*.

The Agency argues that these issues should not be considered because Ballanger has failed to exhaust his administrative remedies.  Def.'s Br. at 8.  It asserts that Congress, in 7 U.S.C. § 6912(e), "has required the exhaustion of all available administrative remedies as a condition precedent to any action against the USDA or an agency of the USDA."  Def.'s Br. at 8.  In *Ace Property and Casualty Insurance Company v. Federal Crop Insurance Corporation*, the Eighth Circuit recently held that 7 U.S.C. § 6912(e) is not a jurisdictional bar to review.  440 F.3d 992, 999 (8th Cir. 2006).  The court stated:  "After reviewing the cases and comparing §

6912(e) to other statutes we conclude that § 6912(e) is nothing more than a 'codified requirement of administrative exhaustion' and is thus not jurisdictional." *Id*. (citing *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975); *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002)). Thus, in the Eighth Circuit, failure to exhaust remedies is not a jurisdictional bar under 7 U.S.C. § 6912.

In any event, § 6912 requires *remedy* exhaustion, not *issue* exhaustion, and the Agency argues only that Ballanger has raised new issues on appeal that he did not raise during the agency proceedings. *See* 7 U.S.C. § 6912(e) ("Notwithstanding any other provision of law, a person shall exhaust all administrative appeal *procedures* established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction . . .") (emphasis added); *see also* Def.'s Br. at 8. In *Sims v. Apfel*, 530 U.S. 103, 107 (2000), the Supreme Court considered the difference between "administrative issue exhaustion" and "exhaustion of remedies." Administrative *remedy* exhaustion requires a party to seek the appropriate levels of agency review and to obtain a final agency decision, while administrative *issue* exhaustion requires a party to raise issues before an agency in order to preserve them on appeal to the district court. *See id*. The Court observed that "requirements of administrative issue exhaustion are largely creatures of statute," but noted that an issue exhaustion requirement may also be court-imposed or required by an agency's regulations. *Sims*, 530 U.S. at 108-09. In this case, the Court is not aware of any statute or regulation that requires issue exhaustion for an appeal from the NAD. Thus, the Court must decide whether it is appropriate to impose an issue exhaustion requirement here.

Where there is no applicable statute or regulation that requires issue exhaustion, the

propriety of imposing an issue exhaustion requirement turns on whether the administrative proceeding is adversarial in nature. *See id*. at 109-10. The more adversarial the proceeding, the more necessary issue exhaustion is to ensure "that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide," and "that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence."[1] *Hormel v. Helvering*, 312 U.S. 552, 556 (1941); *see also Sims*, 530 U.S. at 109-10.

The National Appeals Division Rules of Procedure reflect that NAD proceedings are adversarial in nature. The rules grant the director and hearing officer the authority to administer oaths and affirmations, and to issue subpoenas for the attendance of witnesses and the production of evidence at the request of either party. 7 C.F.R. § 11.8(a)(2). The hearing officer receives evidence into the hearing record, and each side may present a written statement of its position. 7 C.F.R. § 11.8(c). Each party "shall have the opportunity to present oral and documentary evidence, oral testimony of witnesses, and arguments in support of the party's position; controvert evidence relied on by any other party; and question all witnesses." 7 C.F.R. § 11.8(c)(5)(ii). The regulations also reflect that parties to an NAD proceeding have ample opportunity to raise issues that may not have been apparent from the outset. Under the regulations, the hearing officer "will allow presentation of evidence by any party without regard

---

[1] In *Sims*, the Supreme Court was divided about whether the petitioner, a social security claimant, was required to exhaust issues in a request for review by the Appeals Council in order to preserve those issues for judicial review. A plurality of the Court concluded that the non-adversarial nature of social security proceedings made an issue exhaustion requirement inappropriate. *See Sims*, 530 U.S. at 112. Four dissenting justices disagreed, observing that the specialized knowledge required at the agency level makes issue exhaustion particularly important. *Id*. at 114 (Breyer, J., dissenting).

to whether the evidence was known to the officer, employee, or committee of the agency making the adverse decision at the time the adverse decision was made." *Id*. And, at the Director Review phase, the director retains discretion to remand the proceeding to the hearing officer, or hold a new hearing, in the event that new evidence is submitted. 7 C.F.R. § 11.9(d)(1).

The adversarial nature of the administrative proceedings counsel against allowing Ballanger to raise new arguments now that he did not raise during the administrative appeal or the Director Review phase. *See Sims*, 530 U.S. at 109-10. The Agency was not on notice of Ballanger's arguments prior to this appeal, and at this stage neither party may introduce new evidence.[2] *See Hormel*, 312 U.S. at 556. Ballanger had ample opportunity to raise his arguments at each phase of the administrative proceeding, *see* 7 C.F.R. §§ 11.8(c)(5)(ii), 11.9(d)(1), and the determination of the existence of a wetland requires specialized knowledge. *See Sims*, 530 U.S. at 114 (Breyer, J., dissenting). Finally, the Court notes that the Eighth Circuit refused to consider an argument not raised before the agency in another case concerning a wetlands determination. *See Downer*, 97 F.3d at 1005 (holding that the court did not have to consider whether the wetlands at issue were artificially created, because that argument was not presented before the agency); *see also Etchu-Njang v. Gonzales*, 403 F.3d 577, 583 (8th Cir. 2005) (requiring issue exhaustion in an immigration case and discussing the propriety of a court-imposed issue exhaustion requirement); *Cent. S.D. Coop. Grazing Dist. v. Sec'y of the United States Dep't of Ag.*, 266 F.3d 889, 901 (8th Cir. 2001) ("We need not consider arguments a party failed to raise before the agency.").

---

[2]The Court notes that each of Ballanger's three new arguments would likely require a remand for resolution.

Ballanger's brief and reply brief fail to direct the Court's attention to any place in the record where he previously objected to the Agency's alleged failure to obtain data during the growing season, to its alleged failure to follow recent wetland determination methodologies,[3] or to its alleged failure to consider whether the removal of woody vegetation had only a minimal impact on water flow.[4]  *See* Pl.'s Br. at 20-32 and Pl.'s Reply Br. at 4-6.  After reviewing the record, the Court concludes that Ballanger did not raise any of these issues in his complaint to the NAD (*See* Admin. Rec. 161, 178, 181), during the appeal to Hearing Officer Hicks (Admin.

---

[3] Ballanger did make the general argument that the land at issue was not a wetland, but there is no indication in the record that he made the specific arguments he now makes on appeal. *See* Admin Rec. 161, 178, 181, 496, 500.  In the NAD Appeal Determination, Hicks observed that Ballanger did not present evidence on appeal showing that the land was free of wetland areas.  *See* Admin Rec. 500, *see also* 7 C.F.R. § 11.8(e) (stating that "the appellant has the burden of proving that the adverse decision of the agency was erroneous by a preponderance of the evidence").

[4] Ballanger states in his brief that he raised the "minimal impact" question during his NAD appeal.  *See* Pl.'s Br. 7.  Ballanger does not point to any place in the record that reflects that he raised this issue, much less that he presented evidence on it, and the Court cannot find a reference to the issue in the record.  The applicable regulation requires a party to request a minimum impact determination before converting a wetland.  If the party does not do so, the party bears the burden of proving that the conversion has only a minimal impact:  "A request for such determination will be made prior to the beginning of activities that would convert the wetland.  If a person has converted a wetland and then seeks a determination that the effect of such conversion on wetland was minimal, the burden will be upon the person to demonstrate to the satisfaction of NRCS that the effect was minimal."  7 C.F.R. § 12.31(d); *see Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 268 (4th Cir. 2006) (noting that the applicant bears the burden of proving minimal impact pursuant to 7 C.F.R. § 12.31(d) and declining to find that the agency erred in not making a minimal impact determination where the applicant raised the issue for the first time on appeal).  Although Ballanger appears to argue that this regulation conflicts with the statute, *see* Pl.'s Reply Br. at 5, the statute is silent on the question of who should bear the burden of proof regarding the question of minimal impact, and the Court can see no clear conflict between the statute and the regulation.  *Compare* 16 U.S.C. § 3822(f)(1) with 7 C.F.R. § 12.31(d); *cf. Downer*, 97 F.3d at 1010 (Beam, J., dissenting) (stating that the government bears the burden of proof on the question whether a wetland exists, and then the burden of establishing an exemption falls on the producer shown to be ineligible).  Because Ballanger did not raise this question during the administrative proceedings, the Court will not consider it in depth.

Rec. 194-97), in his complaint requesting Director Review (Admin. Rec. 511), or during the Director Review proceedings (Admin. Rec. 492-97). For the reasons discussed above, the Court will not consider Ballanger's new arguments in this appeal.

### B. *Definition of "Converted Wetland"*

Ballanger argues that the Agency erroneously failed to conduct a study to determine if the removal of woody vegetation impaired water flow in violation of the statute, and that the Agency improperly enlarged the statutory definition of "converted wetland" when it enacted a regulatory definition that added additional language to the statutory language.[5] The authorizing statute defines converted wetland as follows:

> The term "converted wetland" means wetland that has been drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water) for the purpose or to have the effect of making the production of an agricultural commodity possible . . . .

16 U.S.C. § 3801(a)(6)(A). In contrast, the federal regulation defines converted wetland as follows:

> Converted wetland is a wetland that has been drained, dredged, filled, leveled, or otherwise manipulated (including *the removal of woody vegetation or* any activity that results in impairing or reducing the flow and circulation of water) for the purpose of or to have the effect of making possible the production of an agricultural commodity without further application of the manipulations described herein . . . .

7 C.F.R. § 12.2(a) (emphasis added). Ballanger contends that the statute requires the Agency to conduct a water flow impairment study before determining that a party has converted wetland.

---

[5]Ballanger clearly raised the first argument during the administrative proceedings, and the second argument is so closely related to the first that the Court will consider both. *See* Admin. Rec. 196.

Ballanger also argues that the Agency improperly enlarged the statutory definition when it added language about "the removal of woody vegetation" to the regulation.

      1.    *Does the statute require the Agency to conduct a water flow impairment study?*

Ballanger contends that the statute requires the Agency to conduct a water flow impairment study before making a determination that there is converted wetland. Ballanger focuses on the parenthetical language in the statute, which states: "including any activity that results in impairing or reducing the flow, circulation, or reach of water." This language, however, is best characterized as an illustrative parenthetical, instead of a necessary part of the definition. *See* 16 U.S.C. § 3801(a)(6)(A); *see also Fed. Land Bank of St. Paul v. Bismark Lumber Co.,* 314 U.S. 95, 99-100 (1941) (noting that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principal") (citing *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 189 (1941); *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125 (1934)). This is particularly true because the "including" phrase is in parentheses.

Without the parenthetical phrase, the statute reads as follows: "The term 'converted wetland' means wetland that has been drained, dredged, filled, leveled, or otherwise manipulated . . . for the purpose or to have the effect of making the production of an agricultural commodity possible . . . ." 16 U.S.C. § 3801(a)(6)(A). The Eighth Circuit has observed that the key to conversion is "manipulation," stating: "Under the statute, conversion occurs when wetland is 'manipulated' with a certain effect," namely to make it capable of agricultural production. *Gunn*, 118 F.3d at 1238. The record reflects that the Agency determined that the land was properly classified as a wetland before it determined that the wetland had been converted. *See*

Admin. Rec. 71-73, 77-88, 92-94, and 98-100.  At that stage, the Agency properly focused on the existence of a wetland.  Subsequently, the Agency properly focused on whether land had been manipulated to make agricultural production possible.  Because the statute clearly defines a "converted wetland" as one that has been "drained, dredged, filled, leveled, or otherwise manipulated . . . for the purpose or to have the effect of making the production of an agricultural commodity possible . . . . ," the Court will affirm the Agency's determination that the wetland was converted.  *See* 16 U.S.C. § 3801(a)(6)(A).

     2.     *Did the Agency improperly enlarge the statute*?

Ballanger next argues that the Agency improperly enlarged the statute when it added language about "the removal of woody vegetation" to the regulation.  Pl.'s Br. at 29.  In his Director Review Determination, Deputy Director Johnson rejected Ballanger's argument that the Agency was required to conduct a water flow impairment study.  Johnson concluded that Ballanger's land was converted wetland, as it is defined in 7 C.F.R. § 12.2(a), because Ballanger removed woody vegetation.  Johnson stated:  "That regulation does not require that the removal of woody vegetation impair or reduce the flow and circulation of water.  Instead, it uses the disjunctive, stating that a manipulation includes the removal of woody vegetation <u>or</u> any other activity interfering with water flow."  Admin. Rec. 496 (emphasis in original).  Johnson continued:  "Thus, because Appellant admits he removed woody vegetation, FSA was not required to prove that Appellant's removal of woody vegetation impaired or reduced the water flow."  Admin. Rec. 496.

In *Chevron*, the Supreme Court made clear that an agency has broad discretion in its interpretation of a statute, stating:  "We have long recognized that considerable weight should be

accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Chevron*, 467 U.S. at 844.  A reviewing court must consider, first, whether the intent of Congress is clear, and second, if the statute is silent or ambiguous with respect to the specific issue, whether the agency's answer is based on a permissible construction of the statute.  *Id*. at 842-43.  For the reasons discussed above, the Court concludes that the statute clearly does not require the agency to conduct a water flow impairment study before determining that a wetland has been converted.

Even if the statute were in some way ambiguous, the agency's regulation would be a permissible interpretation of the statute.  The Court will "defer to an agency's interpretation of . . . a statute if that interpretation is consistent with the plain meaning of the statute or is a permissible construction of an ambiguous statute."  *Coal. for Fair and Equitable Reg. of Docks on Lake of the Ozarks,* 297 F.3d at 778 (citing *Escudero-Corona,* 244 F.3d at 613); *see generally Chevron,* 467 U.S. at 844.  In *Gunn*, the Eighth Circuit observed that *Chevron* deference applies to the USDA's "construction of statutes and regulations pertaining to wetland conversions." *Gunn*, 118 F.3d at 1238.  Moreover, the court found that the regulations defining a "converted wetland" were consistent with the statute.  *Id*. at 1236-37.  The Court sees no reason to reach a different conclusion here.  As with the parenthetical language in the statute, the language about "the removal of woody vegetation" in the regulation is merely an illustrative parenthetical.  Because it is merely an illustrative parenthetical, it does not alter the meaning of the statute.  In fact, the specific activity of removing woody vegetation is consistent with the meaning of the statute.  If one manipulates a wetland by removing woody vegetation in order to produce agricultural crops on it, one has converted the wetland.  Thus, the Agency's explanatory phrase,

which includes "woody vegetation," is a permissible construction of the statute. And, because Ballanger admitted removing woody vegetation to make crop production possible, he clearly converted wetland. *See* Admin. Rec. 495-96.

In conclusion, the Agency's determination that Ballanger converted wetland was consistent with the plain meaning of the statute, and the regulation on which the Agency based its decision was a permissible construction of the statute. Because the Agency's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *see* 5 U.S.C. § 706(2)(A),(C), the Agency's decision is affirmed.

## V.  CONCLUSION

For the reasons discussed above, the Agency's decision is AFFIRMED, and Ballanger's Complaint (Clerk's No. 1) is DISMISSED.

IT IS SO ORDERED.

Dated this ___15th___ day of September, 2006.

_____
ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT